UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAKELIA S. DAVIS,

        Plaintiff,                        CIVIL ACTION NO. 12-14437

       v.                              DISTRICT JUDGE DAVID M. LAWSON

                                       MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 12)**

Plaintiff Shakelia S. Davis challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 12). Judge David M. Lawson referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

    *A.  Framework for Disability Determinations*

Under the Social Security Act (the "Act"), Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.  *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th

Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.   REPORT

#### A.  *Administrative Proceedings*

Plaintiff applied for supplemental security income and disability insurance benefits in March of 2008 (Tr. 57); the Commissioner denied the application (Tr. 57). Plaintiff appeared before ALJ John L. Christensen without counsel on April 28, 2009 (Tr. 63); in a May 2009 written decision, ALJ Christensen found Plaintiff was not disabled (Tr. 57-63). Plaintiff did not appeal.

Plaintiff applied a second time for supplemental security income and disability insurance benefits on February 17, 2010 alleging she became disabled on November 1, 2009 (Tr. 12). After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ JoErin O'Leary, who considered the case *de novo* (Tr. 12). In a written decision, the ALJ found Plaintiff was not disabled (Tr. 19). Plaintiff requested an Appeals Council review (Tr. 8). On August 30, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B. ALJ Findings[1]

Plaintiff was 31 years old on her disability onset date in November of 2009 (Tr. 18). She has a high school education, and past relevant work as a fast food worker (Tr. 17). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her disability onset date in 2009 (Tr. 14).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bilateral keratoconus[2] with vision loss and migraine headaches (Tr. 15).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 15).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> Light work . . . except that in addition, [Plaintiff] would be limited to work requiring no more than occasional near acuity and constant far acuity; she would be limited to work that did not require depth perception; she could not perform occupational driving; she must avoid all exposure to bright or flashing lights; she must avoid working in direct sunlight; and[,] finally, she must avoid concentrated exposure to video display terminals, such as a computer.

(Tr. 15).

At step four, the ALJ – adopting the prior May 2009 decision – found that Plaintiff could not perform her past relevant work as a fast food worker (Tr. 17).

---

[1] Unless otherwise stated, "ALJ" refers to ALJ O'Leary.

[2] Keratoconus is a "noninflammatory, usually bilateral protrusion of the cornea, the apex being displaced downward and nasally. It occurs most commonly in females at about puberty. The cause is unknown, but hereditary factors may play a role." *Dorland's Illustrated Medical Dictionary*, 994 (31st Ed. 2007).

At step five, the ALJ found Plaintiff was not disabled, because she could perform a significant number of jobs in the economy such as packaging jobs, office-setting jobs, and office complex cleaner jobs (Tr. 18).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements[3]

Plaintiff stopped working in November of 2009 because of her vision problems (Tr. 34-35). She has a degenerative eye condition that changes the shape of her eye (Tr. 32). Doctors have recommended a cornea transplant in each eye, but Plaintiff has not had the operation; she has no health insurance (Tr. 32, 42). Her lack of insurance makes it difficult to get proper treatment for her eye, and she does not wear contacts or eyeglasses because she cannot afford them (Tr. 41). She can see well enough to drive, but finds it difficult to drive at night; her eyes are also affected when the pavement is wet, or when the sun shines too brightly (Tr. 33, 41). Plaintiff has difficulty reading small words; she must squint to read a newspaper (Tr. 41).

Plaintiff's condition causes migraine headaches two to three times a month that last three to four days (Tr. 35, 37, 46). They are "unbearable": Plaintiff experiences difficulty breathing, a feeling that her eye is about to fall out or explode, and she typically goes to the emergency room (Tr. 35). Her headaches also make it difficult to sleep; and, if Plaintiff wakes up with a headache, she lies down for most of the day (Tr. 44-46). Between February of 2010 and the date of her March 2011 hearing, she had been to the emergency room "plenty" of times, including just two

---

[3] Plaintiff's testimony before the ALJ reflects her subjective view of her medical condition, abilities, and limitations. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

weeks prior to her hearing (Tr. 36). At the hospital, Plaintiff is given pain medicine and an antihistamine (Tr. 36-37).

Plaintiff's physician typically prescribes Imitrex,[4] Vicodin, and Cyproheptadine.[5] She takes Vicodin as needed – whenever she has migraines or back pain – and Cyroheptadine three times a day (Tr. 37-38). Cyroheptadine helps her lack of appetite, which Plaintiff often experiences regardless of whether she has a migraine; she has not lost any weight (Tr. 37-38, 40). Because her medications are so expensive without insurance coverage, Plaintiff usually has her prescriptions filled in very small amounts (Tr. 40).

Plaintiff lives in a house with her two children, ages eight and ten (Tr. 42-43); it is sometimes difficult for her to do things with them because of her migraines (Tr. 42). She receives support from her family when she feels bad, which happens about twice a month (Tr. 42-43). Her uncle, for example, will cut the grass, or clean up around the house (Tr. 43). When Plaintiff does not feel "real sick," she prepares meals for her children, and can vacuum, dust, and wash dishes (Tr. 44).

### 2. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and past work experience who could perform light work that involved

---

[4] Imitrex "helps to relieve headaches, pain and other symptoms of migraines, including sensitivity to light/sound, nausea, and vomiting." *See* http://www.healthcentral.com/migraine/r/medications/imitrex-oral-11571/uses (last accessed October 11, 2013).

[5] Cyproheptadine is an antihistamine, which, in addition to treating red, irritated, itchy, watery eyes and other symptoms commonly associated with allergies, is also used to treat headaches. *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682541.html#why (last accessed October 11, 2013).

occasional near acuity, though the work could require constant far acuity; the individual also must avoid work that required depth perception, occupational driving, any exposure to bright or flashing lights, direct sunlight, or concentrated exposure to video display terminals (i.e., the individual could not work at a computer all day) (Tr. 48-49). The VE testified that such an individual could perform Plaintiff's past relevant work as a fast food worker; and, other jobs in the national and regional economy, such as packaging jobs, jobs in office settings that did not require reading fine print, or work as a cleaner (Tr. 49).

The ALJ then added that the hypothetical individual would be absent from work on an unpredictable basis – between three and four days per month (Tr. 50). The VE testified that such an individual would be precluded from work (Tr. 50).

### D.  *Plaintiff's Claims of Error*[6]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the hypothetical question she posed to the VE – which omitted Plaintiff's reported need to be absent three to four days a week – did not accurately portray Plaintiff's individual physical and mental impairments.

---

[6] Plaintiff implies that the ALJ erred in her application of the treating source rule; she refers to SSR 96-8, which states that an RFC must "always consider and address medical source opinions," alongside 20 C.F.R. § 404.1527(d)(2), emphasizing the proper weight to be given to treating source opinions (Dkt. No. 8 at pp. 8-9 (CM/ECF)). However, no medical opinion evidence – other than the assessment of consultative physician Michael McManus, M.D., which is consistent with the ALJ's RFC – can be found on the record (Tr. 65-72). Plaintiff also implies that the ALJ's credibility determination was incorrect (Dkt. No. 8 at p. 10 (CM/ECF)). Plaintiff fails to substantiate this argument. Accordingly, this Magistrate Judge deems it waived. *McPherson v. Kelsey*, 125 F. 3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

Plaintiff bears the burden to establish a prima facie case of disability. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). At step five, the burden shifts to the Commissioner to show that Plaintiff has the capacity to perform work in the national economy. *Id.* This burden must be met with a finding supported by substantial evidence. *Parley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be shown through reliance on a VE's testimony in response to a hypothetical question, as long as the question accurately describes Plaintiff's physical and mental impairments, and takes Plaintiff's limitations into account. *Id.* at 779-80. Plaintiff's self-reported limitations may be used to establish disability in certain situations. *Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Cagle v. Astrue*, 2012 WL 3201960, at *6 (E.D. Tenn. July 16, 2012):

> When a Plaintiff attempts to establish disability based on subjective complaints, she must provide objective medical evidence of an underlying medical condition that either confirms the severity of the alleged symptoms or indicates the condition reasonably could be expected to cause symptoms as severe as alleged. 20 C.F.R. § 404.1529; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity. *See* 20 C.F.R. § 404.1529(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531.

The record contains no evidence to support a finding that Plaintiff required sporadic absences each month; as such, Plaintiff failed to carry her required burden.

More importantly, the Sixth Circuit Court of Appeals established "that the principles of res judicata can be applied against the Commissioner." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997). Thus, "[w]hen the commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.*

After the decision in *Drummond*, the Commissioner issued an Acquiescence Ruling applicable to the Sixth Circuit requiring an ALJ to adhere to previous findings by an ALJ – including the Plaintiff's RFC – unless the claimant presents new or material evidence of deterioration in her condition. It states that:

> [w]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98–4(6), 63 Fed.Reg. 29771–01 (June 1, 1998). Thus, as the ALJ noted (Tr. 12), departing from ALJ Christensen's RFC requires that Plaintiff show "new and material evidence" that Plaintiff's condition worsened. AR 98-4(6); *See, e.g., Drogowski v. Comm'r of Soc. Sec.*, Case No. 10-12080, 2011 WL 4502955, at *2-3 (E.D. Mich. Sept. 28, 2011); *Slick v. Comm'r of the Soc. Sec.*, Case No. 07-13521, 2009 WL 136890, at *2 (E.D. Mich. Jan. 16, 2009). Furthermore, "[a]ny errors or inconsistencies in [the first] ALJ []'s decision do not lessen its binding effect[; t]he bar of *res judicata* does not only apply to good decisions." *Jackson v. Apfel*, 74 F. Supp. 2d 698, 700 (E.D. Mich. 1999).

Plaintiff makes no attempt to argue that her condition worsened or otherwise materially changed; nor does this Magistrate Judge find any evidence on record to substantiate such a claim. Plaintiff's present claim is no different than her initial application, which was denied in 2009, and which she did not appeal.[7] In the Agency's 2009 decision, ALJ Christensen found that Plaintiff suffered from advanced keratoconus in her left eye, with concomitant headaches twice a

---

[7] In fact, a large portion of the medical evidence on record corresponds to the previously adjudicated time period.

month (Tr. 60); he made no finding as to the duration of these headaches (Tr. 57-62).[8] ALJ Christensen found Plaintiff could perform light work, "except no work requiring visual acuity such as reading small print on detailed instructions or which required judgment based on depth perceptions and no reading of video screens" (Tr. 60). Here, the ALJ further specified that Plaintiff could not be exposed to bright or flashing light, or sunlight (Tr. 15). Yet, the VE still found her able to perform work in the regional economy (Tr. 49). Furthermore, state agency physician Michael McManus found Plaintiff to be capable of light, unskilled work; he opined that the medical evidence did not "reveal a worsening physical condition" and adopted the May 2009 decision accordingly (Tr. 79). The ALJ reasonably gave considerable weight to Dr. McManus' opinion, and her RFC is consistent with the opinion. Therefore, this Magistrate Judge finds that substantial evidence supports the ALJ's decision.

### IV.   CONCLUSION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140

---

[8] According to ALJ Christensen's decision, Plaintiff also testified that she experienced headaches twice a *week* (Tr. 60). Although unclear, this inconsistency suggests that, at worst, Plaintiff's condition remained largely the same after her 2009 decision; at best, Plaintiff's condition improved (Tr. 60).

(1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

            s/Mark A. Randon
            Mark A. Randon
            United States Magistrate Judge

Dated: October 16, 2013

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 16, 2013, by electronic and/or ordinary mail.

            *s/Eddrey Butts*
            *Case Manager for Magistrate Judge Mark A. Randon*